IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

C.A. NO. 13-2371

_____

ANDREW CARMAN and KAREN CARMAN

Appellants

v.

JEREMY CARROLL

_____

BRIEF OF APPELLANT AND APPENDIX (VOLUME ONE – PAGES 1-2)

_____

APPEAL FROM JURY VERDICT AND JUDGMENT
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
AT CIVIL ACTION NO. 3:10-CV-1013
THE HONORABLE JAMES M. MUNLEY
DATED APRIL 10, 2013

_____

DYLLER LAW FIRM

Barry H. Dyller, Esq.
Kelly A. Bray, Esq.
Gettysburg House
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

Attorney for Plaintiffs-Appellants
Andrew Carman and
Karen Carman

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

The Warrantless, Consentless Search of the Carmans' Garage . . . . . . . . 6

Carroll's Warrantless, Consentless Entry onto the Carmans' Curtilage . . . 7

The Use of Unreasonable Force . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

The Search of the Carmans' Home . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STATEMENT OF RELATED CASES AND PROCEEDINGS . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT ONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

THE DISTRICT COURT ERRED
BY FAILING TO GRANT MR. CARMAN
AND MRS. CARMAN A DIRECTED VERDICT
ON THEIR FOURTH AMENDMENT CLAIMS . . . . . . . . . . . . . . . . . . . . 12

The Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Carroll's Warrantless Entry Into the
Carmans' Curtilage Violated the Fourth Amendment  . . . . . . . . . . . . . . 17

Carroll's Seizure of Mr. Carman  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

POINT TWO  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

THE DISTRICT COURT GAVE AN INADEQUATE
JURY INSTRUCTION REGARDING THE
KNOCK AND TALK DOCTRINE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Discussion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

COMBINED CERTIFICATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

## CASES

*Bielevicz v. Dubinon*,
915 F.2d 845 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bleavins v. Bartels,*
422 F.3d 445 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*California v. Ciraolo*,
476 U.S. 207, 106 S. Ct. 1809, 90 L.Ed.2d 210 (1986) . . . . . . . . . . 18, 27

*Childs v. Franco,*
563 F.Supp. 290 (E.D.Pa. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Ladue v. Gilleo,*
512 U.S. 43 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
66 F.3d 604 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Estate of Smith v. Marasco,*
318 F.3d 497 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 4, 18-20, 28, 30

*Flordia v. Jardines,*
__U.S.__, 133 S. Ct. 1409 (2013) . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 27-28

*Glick v. White Motor Company,*
458 F.2d 1287 (3d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Graham v. Connor,*
490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Maryland v. King*,
__ U.S. __, 133 S.Ct. 1958, 186 L. Ed.2d 1 (2013) . . . . . . . . . . . . . . . . 21

*Oscanyan v. Arms Co.,*
103 U.S. 261 (1880) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Payton v. New York*,
445 U.S. 573 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pivirotto v. Innovative Systems, Inc.,*
191 F.3d 344 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rhoades, Inc. v. United Air Lines, Inc.,*
340 F.2d 481 (3d Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Tait v. Armor Elevator Co.,*
958 F.2d 563 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Terry v. Ohio,*
392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States of America v. McKeon,*
738 F.2d 26 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Conrad,*
578 F. Supp.2d 1016 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Hammett*,
236 F.3d 1054 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-31

*United States v. Hendrick,*
922 F.2d 396 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Jones,*
239 F.3d 716 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Karagozian,*
715 F. Supp. 1160 (D. Conn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. United States District Court*,
407 U.S. 297 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATUTES

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

## RULES

Third Circuit Local Appellate Rule 28.1(a)(ii) . . . . . . . . . . . . . . . . . . . . . 11
Fed.R.App.Pro. 32(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Fed.R.App.Pro. 32(a)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Federal Rule of Evidence 801(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## CONSTITUTIONAL PROVISIONS

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

<u>STATEMENT OF JURISDICTION</u>

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, because plaintiffs-appellants Andrew Carman ("Mr. Carman") and Karen Carman ("Mrs. Carman") brought this action pursuant to 42 U.S.C. § 1983, alleging that the defendant-appellee Jeremy Carroll ("Carroll") violated their Fourth Amendment rights by warrantless entry onto their curtilage, unreasonable seizure and use of unreasonable force against Mr. Carman, and coerced search of their home.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, because this is an appeal from a final decision of a district court of the United States.  The case was tried before a jury on April 8 and April 10, 2013.  On April 10, 2013, the jury returned a verdict in favor of Carroll.  (App. 2).

On May 10, 2013, Mr. Carman and Mrs. Carman timely filed their Notice of Appeal.  (App. 1).

<u>STATEMENT OF ISSUES</u>

I.  Whether the District Court erred by denying Mr. Carman's and Mrs. Carman's motions for a directed verdict on their Fourth Amendment claim against Carroll for his entry onto their backyard, back deck and curtilage without consent or a warrant?  This was raised and ruled upon at Appendix 17-18, 99-100;TT (4/8/13), 8:22-9:3, 90:16-91:20.

II.  Whether the District Court erred by denying Mr. Carman's motion

for a directed verdict on his Fourth Amendment seizure claim against

Carroll?  This was raised and ruled upon at Appendix 100-101; TT (4/8/13),

91:25-92:16.

III.  Whether the District Court erred by giving an inadequate and

incorrect jury instruction relating to the "knock and talk" doctrine?  This was

raised and ruled upon at Appendix 105-106, 110-111, 112, 156-157, 162;

TT (4/8/13), 96:4-97:4, 101:21-103:12; TT (4/10/13), 24:15-25:17, 30:9-12.

<u>STATEMENT OF THE CASE</u>

Mr. Carman and Mrs. Carman brought this case pursuant to 42

U.S.C. § 1983, asserting violations of their Fourth Amendment rights.  After

discovery and summary judgment motions, the case was tried.  The

defendant Jeremy Carroll won the verdict at trial.

The trial was flawed for several reasons.  First, on the undisputed

evidence, the District Court should have granted Mr. Carman and Mrs.

Carman a directed verdict on the Fourth Amendment claim against Carroll

for his entry onto the Carmans' backyard, back deck and curtilage without

consent or a warrant.  Second, on the undisputed evidence, the District

Court should have granted Mr. Carman a directed verdict on his Fourth

Amendment unreasonable seizure claim.   Third, the District Court's jury instruction on the "knock and talk" doctrine was inadequate and incorrect because it did not accurately reflect the law.   Ultimately, the trial was not a fair proceeding designed for the jury to decide the case on the relevant facts and an accurate understanding of the law.

Prior to trial, on March 28, 2013, counsel for Mr. Carman and Mrs. Carman advised the District Court that the United States Supreme Court decided a case that was directly on point with the Carmans' first claim, *i.e.* that Carroll entered the backyard and back deck which constitutes curtilage of the Carmans' home.  Based on the case *Flordia v. Jardines,* __ U.S. __ , 133 S. Ct. 1409 (2013), the Carmans would be entitled to a directed verdict at trial.  (App. 164-175).   At the conclusion of Carroll's counsel's opening argument and again at the conclusion of Carroll's testimony, the Carmans moved for a directed verdict on this claim.  (App.17-18, 99-100; TT (4/8/13), 8:22-9:3, 90:16-91:20).  It was undisputed that Carroll entered the Carmans' curtilage - their unattached garage, back yard and deck attached to the back of the house.  There was no warrant, no consent, and no exigency.  The District Court therefore should have granted a directed verdict to Mr. Carman and Mrs. Carman on this issue.

In addition to Carroll's entry onto the Carmans' curtilage, he unreasonably seized Mr. Carman.  Mr. Carman, lawfully on his back deck, tried to re-enter his home.  Carroll would not let him, and seized Mr. Carman.  The District Court denied Mr. Carman's motion for a directed verdict.

Because Carroll and the District Court believed the "knock and talk" doctrine applied, the Carmans' counsel submitted a proposed jury instruction on the "knock and talk" doctrine.  That proposed instruction was completely accurate, and was appropriate to the facts of this case.  (App. 212-214).  The Third Circuit and the Supreme Court have been clear that the Fourth Amendment forbids entry onto curtilage at least in the absence of exigent circumstances.  Carroll neither pled (Answer, App. 258-265) nor presented evidence of any exigent circumstance.

The District Court ultimately denied the Carmans' proposed jury instruction and proceeded with a jury instruction based on language in *Estate of Smith v. Marasco,* 318 F.3d 497 (3d Cir. 2003), which was inapplicable to the undisputed facts revealed through the trial testimony.

The District Court's failure to apply not only applicable law, but law that was directly on point, was error.  This Court should reverse the District

4

Court's denial of the Carmans' motions for a directed verdict.  To permit the district court to ignore applicable, on-point case law would have a drastic chilling effect on the exercise of Fourth Amendment constitutional rights.

## STATEMENT OF FACTS

On July 3, 2009, Karen and Andrew Carman were sitting in their kitchen with Jacqueline Vergottini making salads for their Fourth of July picnic the following day. (App. 27, 46; TT (4/8/13), 18:4-8, 37:6-15).

Andrew Carman, Karen Carman and Jacqueline Vergottini were the only people present at the home. (App. 46; TT (4/8/13), 37:6-7).

While on duty on July 3, 2009, Carroll, a Pennsylvania State Trooper, was dispatched to the Carman residence to look for a stolen vehicle with a New Jersey license plate and the operator of the vehicle, Michael Zita, who had two loaded, stolen handguns in his possession.  (App. 76-77, 90-91; TT (4/8/13), 67:18-68:13, 81:23-82:25).

Although Carroll denied he was informed of Michael Zita's age, that information was included in the dispatch report.  (App. 90-92, 249; TT (4/8/13), 81:18-83:3; Plaintiffs' Trial Exhibit 15-D).

Michael Zita's age was also included in the Pennsylvania State Police investigation report drafted by Trooper Roberts, the trooper who accompanied Carroll to the Carmans' residence.   (App. 71, 234-248 (at 240); TT (4/8/13), 62:5-25; Plaintiffs' Trial Exhibit 15-A).

When Carroll and Trooper Roberts were dispatched to the Carmans' residence, they were told to look for a specific car bearing a New Jersey license plate number.  (App. 72; TT (4/8/13), 63:7-10).

None of the vehicles at the Carmans' residence were the stolen vehicle.  (App. 72; TT (4/8/13), 63:11-15).

The Carmans have a front door, with a clearly marked path leading up to it.  (App. 21, 23, 44, 45, 254, 257; TT (4/8/13), 12:9-12, 14:6-9, 35:14-16, 36:5-9  Plaintiff's Trial Exhibits 22, 26).  Carroll and Trooper Roberts never approached the Carmans' front door.  (App. 74-75; TT (4/8/13) 65:24-66:5).

When visitors come to the Carman home they use the front door entrance.  (App. 24, 44, 45; TT (4/8/13),15:6-23, 35:20-36:4).

The Warrantless, Consentless Search of the Carmans' Garage

Carroll parked his patrol vehicle at the Carmans' residence, exited his vehicle and entered the Carmans' back yard and garage because he

6

claimed he saw a light on in the garage. (App. 79-80, 87, 88; TT (4/8/13), 70:21-71:13, 78:25-79:3).

However, the garage never had electricity, was never wired for electricity and never had any lights in it. (App. 25-26, 45, 251, 252; TT (4/8/13), 16:1-17:24, 36:10-22; Plaintiffs' Trial Exhibits 19, 20).

The incident at the Carmans' property happened at two o'clock in the afternoon in July on a sunny day. (App. 88; TT (4/8/13),79:4-10).

Carroll did not have a warrant to search the Carmans' house, yard, garage or curtilage. (App. 61,72, 79; TT (4/8/13), 52:11-12, 63:20-23, 70:10-14).

Carroll did not have an arrest warrant for Michael Zita. (App. 61, 72-73; TT (4/8/13), 52:9-10, 63:24-64:1).

<u>Carroll's Warrantless, Consentless Entry onto the Carmans' Curtilage</u>

After searching the garage, Carroll and Trooper Roberts walked from the garage located in the back yard of the Carmans' property onto the deck that is adjacent to the Carmans' house. (App. 63, 73-74; TT (4/8/13), 54:1-3, 64:24-65:3).

Jacqueline Vergottini, sister to Mrs. Carman, glanced out the window and noticed police officers in the back yard.  (App. 29, 46-47; TT (4/8/13), 20:17-20, 37:22-38:13).

The Carmans' back yard is an area where visitors don't usually go. (App. 47; TT (4/8/13), 38:1-9).

Mr. Carman walked outside and asked if he could help the officers. Carroll asked Mr. Carman, "Where is he?"  Mr. Carman did not know who they were referring to.  He asked, "Where is who?"  Carroll responded, "Mike Zita." (App. 29; TT (4/8/13), 20:21-23).

Mike Zita has never been to the Carmans' house.  (App. 29-30; TT (4/8/13), 20:16-21:4).

Mr. Carman informed Carroll he hasn't seen Mike Zita in over ten years and he was not at his home.  (App. 29-30, 64, 76; TT (4/8/13), 20:24-21:3, 55:18-19, 67:4-5).

Carroll told Mr. Carman that he wanted to search his house and that if he didn't sit down he was going to be arrested.  (App. 30; TT (4/8/13), 21:8-14).

Mr. Carman told Carroll no and to come back with a warrant.  (App. 30-31, 75; TT (4/8/13), 21:15-22:1, 66:7-21).

8

The Use of Unreasonable Force

Mr. Carman tried to return to his home, but when he reached to open the door Carroll grabbed his arm and pushed him up against the glass slider and tackled him down the stairs off the deck. (App. 30, 65; TT (4/8/13), 21:18-23, 56:12-15).

Mr. Carman was not free to go back into his home. (App. 75, 95; TT (4/8/13), 66:12-21, 86:8-12).

While Mrs. Carman was in the kitchen, she heard a bang and saw Carroll slam Mr. Carman against the sliding glass door. (App. 47; TT (4/8/13), 38:17-20).

Mrs. Carman and Ms. Vergottini ran outside, saw Mr. Carman on the ground, questioned what was happening and were threatened that they would be tasered. (App. 32, 47, 48, 66; TT (4/8/13), 23:13-14, 38:23-39:14, 57:12-19).

When Mr. Carman finally got up he had blood on his lip and his shoulder was hurt. (App. 33, 48, 279; TT (4/8/13), 24:9-13, 39:15-17, Vergottini Deposition, 17:3-14).[1]

---

[1]Ms. Vergottini was unavailable to testify at trial. Her deposition was read into evidence at trial. *See* App. 40-42; TT (4/8/13), 31:24-33:7.

Ms. Vergottini called 911 and 911 operator informed Ms. Vergottini that cops were already there.  Ms. Vergottini said she knew but that the police officers that were present were beating up her brother-in-law.  (App. 33-34, 280, 281; TT (4/8/13), 24:14-25:3, Vergottini Deposition, 17:21, 19:25, 20:2-4).

The Search of the Carmans' Home

The Carmans and Carroll went back onto the back deck and Carroll informed Mrs. Carman that they were looking for Michael Zita.  Mrs. Carman told Carroll that she not seen Michael Zita for at least ten years.  (App. 48-49, 67; TT (4/8/13), 39:18-40:1, 58:11-22).

Carroll informed Mrs. Carman that he wanted to search their home.  Because she had seen Carroll physically assault her husband and refuse to leave, Mrs. Carman felt that she had no choice.  Mrs. Carman therefore gave Carroll and Trooper Roberts permission to search the home.  (App. 49; TT (4/8/13), 40:2-8).

Carroll and Trooper Roberts entered the Carmans' residence and searched their home with their guns drawn.  (App. 34, 49, 69; TT (4/8/13), 25:16-20, 40:11-13, 60:2-3).

10

Mike Zita was not at the home.  (App. 34, 49, 76, 97; TT (4/8/13), 25:21-22, 40:14-15, 67:4-8, 88:7-11).

The Carmans were not charged with any crimes.  (App. 35, 49; TT (4/8/13), 26:4-5, 40:16-17).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Pursuant to United States Court of Appeals for the Third Circuit Local Appellate Rule 28.1(a)(ii), we represent that this case has not previously been before this Court, and there are no related cases or proceedings.

## SUMMARY OF ARGUMENT

After opening arguments and again upon conclusion of testimony, the District Court erred in denying Mr. Carman's and Mrs. Carman's motion for a directed verdict on their Fourth Amendment entry onto the curtilage claim and seizure of Mr. Carman claim.  It was undisputed that Carroll entered various parts of the Carmans' curtilage without a warrant, consent or any exigency.  It was also undisputed that Carroll seized Mr. Carman to prevent him from lawfully retreating from his back deck to the inside of his home.

11

The District Court also erred by giving an inadequate and incorrect jury instruction on the "knock and talk" doctrine.

## ARGUMENT

## POINT ONE

### THE DISTRICT COURT ERRED
### BY FAILING TO GRANT MR. CARMAN AND MRS. CARMAN
### A DIRECTED VERDICT ON THEIR FOURTH AMENDMENT CLAIMS

The Standard of Review

"Review of a directed verdict is plenary." *Bielevicz v. Dubinon*, 915 F.2d 845, 849 (3d Cir. 1990). "A motion for directed verdict should be granted, only if, viewing the evidence in the light most favorable to the non-moving party, there is no question of material fact for the jury, and any verdict other than the one directed would be erroneous under the governing law." *Tait v. Armor Elevator Co.,* 958 F.2d 563, 569 (3d Cir. 1992).

Discussion

In Carroll's lawyer's opening statement he unequivocally admitted all facts necessary for a directed verdict in the Carmans' favor.  Counsel admitted:

12

We live in America.  The Fourth Amendment, it says what?  You have the right to be free from unreasonable search and seizures from the Government, unless there is a good reason for a police officer to be on your yard, come back on your porch, to be in your face, they shouldn't be there, and that is an American right, and I don't think anyone here disagrees with that.

*            *            *

Mr. Carroll and Mr. Roberts met there, got out of the patrol cars, and they didn't know the Carmans, they didn't know Mike Zita, and what they did was, they started cutting across the backyard of the back of the Carmans' residence, and they saw this open garage port and they were looking for a Sebring that was stolen.  They looked in, and the car wasn't there.

*            *            *

They were going up to the back deck to knock on the door and out comes Mr. Carman.

*            *            *

You will hear testimony from Mr. Carroll that they came up the back steps of the deck as Mr. Carman came out.

*            *            *

13

> So they said, look, why don't you sit down for a minute. He said, no, I'm not going to sit down. I'm going back in the house. He started going towards the door and his hands were hidden, and all of a sudden, bing, Jeremy Carroll gets afraid. His hands were hidden, he didn't know who this guy was, and he grabbed him. So he did, he did seize him. That's a seizure.

(App.12-14; TT (4/8/13), 3:19-25, 4:10-17, 4:22-23, 5:19-24).

Clear admissions by counsel during opening statements or closing arguments are binding on their clients. *See United States of America v. McKeon,* 738 F.2d 26 (2d Cir. 1984) ("statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney, [citation omitted], a proposition which extends to arguments to a jury. The binding effect on a party of a clear and unambiguous admission of fact made by his or her attorney in an opening statement was acknowledged by the Supreme Court in *Oscanyan v. Arms Co.,* 103 U.S. 261, 263 (1880) and has been frequently recognized in subsequent lower court decisions involving civil cases").

As explained by *McKeon*, the U.S. Supreme Court has held since at least 1880 that a case may be decided upon such admissions of counsel.

14

*See Oscanyan, supra,* 103 U.S. at 263 (holding that "[t]he power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced"); *id.* ("any fact, bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure equally as if established by the clearest proof"). *See also Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 358 (3d Cir. 1999) (acknowledging that "an attorney's clear and unambiguous statements of fact made during opening or closing arguments can constitute judicial admissions under Federal Rule of Evidence 801(d)(2)," but finding that the attorney in that particular case had not made such an admission); *Glick v. White Motor Company,* 458 F.2d 1287, 1291 (3d Cir. 1972) (applying the law that "judicial admissions are binding for the purpose of the case in which the admissions are made including appeals [citation omitted], and...an admission of counsel during the course of trial is binding on his client" to hold that counsel's "plain and unequivocal acceptance at trial [during closing argument] of the spring exhibits constitutes a binding admission by White"); *Rhoades, Inc. v. United Air Lines, Inc.,* 340 F.2d 481, 484 (3d Cir. 1965) ("that an admission of counsel in the course of trial is binding on his client [is] a point of law upon which

there is little dispute'); *Childs v. Franco,* 563 F.Supp. 290, 292 (E.D.Pa. 1983) ("taken by itself and in context with other statements, the court finds that defense counsel's acknowledgment during closing argument of the existence of some pain from the accident was an unequivocal admission binding upon his client").

After Carroll's admissions that he entered the backyard and back deck without a warrant or consent, Mr. Carman and Mrs. Carman moved for a directed verdict on their claim that Carroll violated their Fourth Amendment rights by entering the curtilage of the Carmans' home, without a warrant and without any exception to the requirement for a warrant. (App. 17-18; TT (4/8/13), 8:22-9:3).  The Carmans moved for a directed verdict again at the conclusion of the testimony on this claim.  (App. 99-100; TT (4/8/13), 90:16-91:20).

There were no exigent circumstances presented for seizing Mr. Carman or for approaching his house from the backyard and back deck instead of from the front path to the front door.  Because the facts on this issue were undisputed, and giving all inferences to the Carroll, the District Court should have granted a directed verdict in Mr. Carman's and Mrs. Carman's favor on these issues.

16

Carroll's Warrantless Entry Into the
<u>Carmans' Curtilage Violated the Fourth Amendment</u>

"[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *United States v. United States District Court*, 407 U.S. 297, 313 (1972).  "A special respect for individual liberty in the home has long been part of our culture and our law."  *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994).  "The Fourth Amendment protects the individual's privacy in a variety of settings.  In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home – a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.'  That language unequivocally establishes the proposition that '[at] the very core [of the Fourth Amendment] stands the right of a [person] to retreat into his own home and there be free from unreasonable governmental intrusion. . . . [T]he Fourth Amendment has drawn a firm line at the entrance to the house. . . . [T]hat threshold may not reasonably be crossed without a warrant."  *Payton v. New York*, 445 U.S. 573, 589-90 (1980).

The Fourth Amendment protects against police officers physically intruding on people's "houses."  The word "houses" includes the physical structure of the home, and also "the curtilage of the house, which . . . enjoys protections as part of the home itself."  *Jardines,* 133 S.Ct. at 1414. "[T]he area 'immediately surrounding and associated with the home'" is the curtilage."  *Id.*  This area around the home is 'intimately linked to the home, both physically and psychologically,' and is where 'privacy expectations are most heightened.'"  *Id., at 1415*, *quoting California v. Ciraolo*, 476 U.S. 207, 213, 106 S. Ct. 1809, 90 L.Ed.2d 210 (1986).  *See also United States v. Hendrick,* 922 F.2d 396, 399 (7th Cir. 1991) (recognizing "that the yard of a residential home is within the curtilage of the house"); *United States v. Conrad*, 578 F. Supp.2d 1016, 1027-29 (N.D. Ill. 2008) (holding that an unenclosed back deck is part of a home's curtilage which is protected by the Fourth Amendment); *United States v. Karagozian,* 715 F. Supp. 1160, 1164 (D. Conn. 1989) (elevated deck in rear of the house is within curtilage of the home); *Bleavins v. Bartels,* 422 F.3d 445, 452 (7th Cir. 2005) (backyard areas are within the curtilage of a home).

In *Estate of Smith v. Marasco*, *supra*, the Court of Appeals explained that:

18

> **Although the officers had a right to knock at Smith's front door in an attempt to investigate Shafer's complaint, we reject the defendants' argument that this right necessarily extended to the officers the right to enter into the curtilage.** Where officers are pursuing a lawful objective, unconnected to any search for the fruits and instrumentalities of criminal activity, their entry into the curtilage **after not receiving an answer at the front door** might be reasonable as entry into the curtilage may provide the only practicable way of attempting to contact the resident.

*Id.*, at 520 (emphasis added).  Throughout the Third Circuit's discussion of this concept of curtilage and discussion of other cases, the Third Circuit repeatedly emphasized that any entry into the curtilage which might be reasonable under the circumstances would be reasonable only if the officers first tried contacting the resident by knocking at the front door, or if any front door was simply not accessible.  *Id.*, at 519-21.  In *Marasco*, the officers first attempted to contact the resident by knocking at the front door. The Court of Appeals reversed a grant of summary judgment for defendants.

Interestingly, the Court of Appeals explained that "the district court did not make findings of fact to support its conclusion that the officers' decision to proceed to the back of Smith's house was reasonable given

their original purpose of investigating Shafer's complaint. The court did not discuss the layout of the property or the position of the officers on that property. **It is unclear from the record exactly how set off Smith's residence is from other properties, and there is no indication of whether the officers followed a path or other apparently open route that would be suggestive of reasonableness**." Id., at 521; emphasis added.

In the present case, the record is crystal clear. The undisputed evidence is that there was no path to the backyard or back deck which would somehow suggest that the officers could knock and talk at the rear of the home. (App. 23, 44, 250; TT (4/8/13) 14:6-9, 35:14-16; Plaintiffs' Trial Exhibit 18). Rather, the undisputed evidence is that there was a path of paving stones to the front door. (App. 21, 23, 44, 45, 254, 257; TT (4/8/13), 12:9-12, 14:6-9, 35:14-16, 36:5-9, Plaintiffs' Trial Exhibits 22, 26). Carroll declined to use that path and instead immediately entered the Carmans' curtilage. (App. 74-75; TT (4/8/13) 65:24-66:5).

Based on these undisputed facts, the District Court should have granted plaintiffs' motion for a directed verdict. *Marasco* completely

supports the Carmans' directed verdict motion because Carroll did not

approach the front door and chose instead to enter the curtilage.[2]


Carroll's Seizure of Mr. Carman

At the conclusion of the testimony, Mr. Carman moved for a directed

verdict on his claim that Carroll violated his Fourth Amendment rights when

Carroll seized him, without probable cause, reasonable suspicion or any

other legally cognizable reason to seize him.  (App. 100-101; TT (4/8/13)

91:25-92:16).

It is undisputed that Mr. Carman was seized.  The question, then, is

whether the seizure of Mr. Carman was reasonable or unreasonable.  It is

undisputed that Mr. Carman was not charged with any crime.  (App. 35; TT

(4/8/13), 26:4-5).

Investigative detentions of persons are permissible where police

officers have reasonable suspicion of criminal activity.  Further, where the

officer also reasonably believes that the suspect is armed and dangerous,

---

[2]This point is obvious.  *See Maryland v. King*, __ U.S. __, 133 S.Ct.
1958, 1982, 186 L. Ed.2d 1 (2013) (Scalia, J., dissenting) ("And could the
police engage, without any, suspicion of wrongdoing, in a 'brief
and...minimal' intrusion into the home of an arrestee-perhaps just peeking
around the curtilage a bit? [citation omitted]. Obviously not.")

the officer may conduct a frisk for his or her personal protection. *See Terry v. Ohio*, [392 U.S. 1, 30](#) (1968) ("where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.")

Here, Carroll was in a person's back yard on his back deck, a place Carroll was not permitted to be. Mr. Carman, on the other hand, exited his own house, and then attempted to return to his own house. Nothing about this creates reasonable suspicion that crime was afoot. Further, while Carroll testified that he could not see Mr. Carman's hands, that would be the case every time a person turns his back on a police officer. To permit a seizure in this circumstance would mean a person could never turn his back on a police officer nor ever retreat to the sanctity of his own home.

22

In the absence of probable cause or reasonable suspicion that Mr. Carman committed a crime, the seizure of Mr. Carman was not and could not have been reasonable. When excessive force is alleged, the Supreme Court discussed the reasonableness of seizures and how to analyze them:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," [citation omitted], however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989).

In the present case, there were no exigent circumstances for seizing Mr. Carman. Here, Mr. Carman did not commit and was not suspected of committing a crime. (App. 35; TT (4/8/13), 26:4-5). Mr. Carman did not pose an immediate threat to the safety of the officers. Instead, Mr. Carman answered Carroll's inquiries. (App. 29-30; TT (4/8/13), 20:21-21:3). Mr.

23

Carman told Carroll that if he wanted to search the home he would have to obtain a warrant.  (App. 30-31; TT (4/8/13), 21:15-22:1).  He tried to return to his house to be left alone (this is not fleeing).  (App. 30, 65; TT (4/8/13), 21:18-23, 56:12-15).  Carroll refused to let him enter his home.  (App. 65, 75, 95; TT (4/8/13), 56:12-15, 66:12-14, 66:19-21, 86:8-12).

Further, Mr. Carman was not resisting arrest, as he was not under arrest.  (App. 129; TT (4/10/13), 12:7-9).  Nor was Carroll effecting an arrest.  (App. 61, 72-73,; TT (4/8/13), 52:9-10, 63:24-64:1).

Finally, Carroll was aided by Trooper Roberts; they did not have to deal with multiple people (Mrs. Carman and her sister were in the house).  (App. 29-30; TT (4/8/13), 20:21-21:3).  Mr. Carman was alone, on his property, when Carroll seized him and used unreasonable force.

Carroll's seizure and use of force under the circumstances was unreasonable and unconstitutional.  There was no warrant for Mr. Carman or Mr. Zita.  (App. 72-73, 79; TT (4/8/13), 63:20-64:1, 70:10-14).  There was no warrant to search Mr. Carman's property or home.  (App. 72, 79; TT (4/8/13), 63:20-23, 70:10-14).  Mr. Carman did not consent to the search of his property and home.  (App. 30-31, 75; TT (4/8/13), 21:15-22:1, 66:6-8).  There was no crime at all at issue, of any degree of severity.

(App. 35, 49; TT (4/8/13), 26:4-5, 40:16-17).  Mr. Carman simply asserted his Fourth Amendment rights.  Mr. Carman simply told Carroll to leave his property and come back with a warrant if he wanted to conduct any type of search.  (App. 30-31, 75; TT (4/8/13), 21:15-22:1, 66:6-8).  Not only were there no exigent circumstances, Carroll did not even plead the existence of exigent circumstances in his Answer.  (App. 258-265, Answer) (containing no affirmative defense relating to exigent circumstances, nor any other mention of exigent circumstances).  Under these circumstances, any seizure was unreasonable.  The District Court should have granted Mr. Carman's motion for a directed verdict with respect to his claim that defendant Carroll unreasonably seized him when Mr. Carman attempted to enter his home from his back deck.

Giving all facts and inferences to Carroll yields the inescapable conclusion that the Carmans were entitled to a directed verdict on their Fourth Amendment claims.  This Court should remand the case with a direction that judgment on the Fourth Amendment claims be entered in the Carmans' favor and against Carroll.  On those claims, the only remaining factual issue should be the extent of the Carmans' damages.

<u>POINT TWO</u>

THE DISTRICT COURT GAVE AN INADEQUATE
<u>JURY INSTRUCTION REGARDING THE KNOCK AND TALK DOCTRINE</u>

<u>Standard of Review</u>

"Generally, 'the standard of review for the district court's ruling on points for charge is . . . abuse of discretion.'" *Duquesne Light Co. v. Westinghouse Elec. Corp.*, <u>66 F.3d 604, 611</u> (3d Cir. 1995) (citations omitted).

<u>Discussion</u>

The Carmans' counsel submitted a proposed jury instruction on the "knock and talk" doctrine, which instruction was completely accurate, and was appropriate to the facts of this case. (App.212-214, supplemental proposed jury instruction). Specifically, counsel requested that the following language be included in the charge:

> The Fourth Amendment to the United States
> Constitution prohibits governments or their agents,

including police officers, from "'physically intruding' on persons [or their] houses. . . ."[3]

When I tell you that the Fourth Amendment protects against police officers physically intruding on their "houses," the word "houses" includes the physical structure of the home, and also "the curtilage of the house, which . . . enjoys protections as part of the home itself."[4] "[T]he area 'immediately surrounding and associated with the home'" is the curtilage."[5] This area around the home is 'intimately linked to the home, both physically and psychologically,' and is where 'privacy expectations are most heightened.'"[6]

I instruct you that the backyard of a person's home is curtilage, protected as if it is part of a person's home. The back deck of a person's home is curtilage, protected as it is part of a person's home. No police officer may come to that part of the home (the backyard or back deck) to investigate, or even to knock on a door.  If a police officer wishes to speak to a person, he must come to the front door and ring the bell or knock on the door.[7]  A visitor, including a police officer, may "approach the home by the front path, knock promptly, wait briefly to be

---

[3]*Flordia v. Jardines,* __U.S.__, 133 S. Ct. 1409, 1414 (2013).

[4]*Id.*

[5]*Id., at 1415*.

[6]*Id., at 1415*, *quoting California v. Ciraolo*, 476 U.S. 207, 213, 106 S. Ct. 1809, 90 L.Ed.2d 210 (1986).

[7]*Id., at 1415*.

received, and then (absent invitation to linger longer) leave.[8]  "[T]he background social norms that invite a visitor to the front door do not invite him"[9] to the back door or back deck.  "No one is impliedly invited to enter the protected premises of the home [including the curtilage] in order to do nothing but conduct a search."[10]

The trial court refused to give this instruction.  (App. 105-106, 162; TT (4/8/13), 96:4-97:4; TT (4/10/13) 30:9-12).  Instead, the trial court gave an instruction based on the language in *Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003).  However, the language in *Marasco* is inapplicable to the undisputed facts in this case, as the facts were revealed in the trial testimony.

The trial testimony was undisputed that Carroll entered the Carman property, through the backyard, and came onto the Carmans' deck in the back which attaches to the back of their house.  (App. 63, 73-74; TT

---

[8]*Id., at 1415*.  *See also*, *id., at 1420 (Alito, dissenting)* ("The law of trespass generally gives members of the public a license to use a walkway to approach the **front** door of a house and to remain there for a brief time."); 1421-1422 ("It is said that members of the public may lawfully proceed along a **walkway leading to the front door** of a house because a custom grants them a license to do so.") (emphasis added).

[9]*Id., at 1416*.

[10]*Id. n. 4*.

(4/8/13), 54:1-3, 64:24-65:3).  By entering the back yard and then the back

deck, Carroll entered the Carmans' protected curtilage.  It is also

undisputed that Carroll did not have permission to enter either the

backyard or onto the deck.  (App. 30-31; TT (4/8/13), 21:15-16, 21:24-

22:1).

As support for its knock and talk instruction, the District Court

referred to *United States v. Jones*, 239 F.3d 716 (3d Cir. 2001).  In *Jones*,

law enforcement officers approached the **front door** of an apartment in an

effort to talk to the occupants.  This contrasts with the present case, in

which Carroll declined to approach the front door.  In *Jones*, the occupants

had left the front door open and a gun in plain view.  This created an

exigency, because the officers were in a place they were lawfully permitted

to be (in a common area of an apartment building, at the front door of an

apartment), and saw a potential danger.  In the present case, Carroll was

in a place he was not permitted to be despite the presence of a front door

and a path to that front door, and there was no exigency, and exigent

circumstances were not even pled.  *Jones* thus has no applicability to this

case.

29

Finally, the District Court also referred to *United States v. Hammett*,

236 F.3d 1054 (9th Cir. 2001) as support for its knock and talk instruction.

*Hammett*, too, is inapposite.  In *Hammett*, the officers went to the **front**

entrance to the home:

> Once the officers reached the home, they knocked
> on the door and shouted "Police."  When they
> received no answer, the officers looked through the
> window next to the door, but saw no inhabitants.
> Officer Kerr again yelled through the window, and
> again received no answer.
>
> The officers then proceeded to circle the house. . . .

*Hammett*, 236 F.3d at 1056.  Unlike the present case, the officers in

*Hammett* at least attempted to make contact with the resident through the

front door, and only then entered the curtilage.  *Hammett* is thus

distinguishable on its facts.  Further, the Third Circuit, while not outright

disavowing *Hammett*, suggested that it was too permissive of officers' entry

onto curtilage.  *See Marasco*, 318 F.3d at 519 ("Some courts of appeals

have been more permissive of this sort of police activity, holding that it is

reasonable and lawful as a matter of law for officers to move away from the

front door as part of a legitimate attempt to interview a person" citing

30

*Hammett*). Thus, *Hammett* is inapplicable on its facts, and the Third Circuit has indicated that it is not as liberal in permitting entry onto curtilage as the Ninth Circuit was in *Hammett*.

In the context of this case, this omitted instruction was crucial. Under the instruction of the "knock and talk" doctrine, which the jury heard, it could interpret Carroll's entry into the curtilage as not constitutionally protected. The District Court charged the jury with the following instruction:

> This investigative tactic can extend beyond the front door of the home and to other areas of the property under a limited number of circumstances. Officers reasonably may believe based on facts available to them that the person they seek to interview may be located elsewhere on the property within the curtilage. That is, the property surrounding the house. An officer's brief entry into the curtilage to test this belief might be justified. Thus, where an officer reasonably believes based on facts available to him that the occupant the officer wishes to speak with may be located elsewhere on the property within the curtilage, they may enter the curtilage to test that belief.

(App. 157; TT Jury Charge (4/10/13) 25:6-17).

"Knock and talk" is a legitimate Fourth Amendment doctrine. But it does not permit entry onto curtilage. Knock and talk is limited to the front

door when possible, as was certainly possible in the present case. The Third Circuit and the Supreme Court have been clear that entry onto curtilage is not permitted by the Fourth Amendment, at least in the absence of exigent circumstances, which were neither present nor pled in this case.

There was no evidence at trial to suggest that it was reasonable for Carroll to enter the Carmans' curtilage. There were no facts suggesting any exigency or reasonable suspicion concerning the curtilage. Rather, if Carroll wished to "knock and talk," he was constitutionally required to use the front path and front door. (App. 254, 257, Plaintiffs' Exhibits 22 and 26). Carroll's own lawyer's closing statement supported the theory that Carroll had to go to the front porch when he stated: "But police officers, like I told you in my opening, they're allowed to come on your property to talk to you, as long as they come on that porch of your property that everyone else does." (App. 121, TT (4/10/13) 4:16-19).

This Court should reverse, order entry of judgment in the Carmans' favor and order a new trial concerning damages.

## CONCLUSION

We respectfully requests that this Court reverse the District Court's judgment and remand the case to the District Court.  We request that this Court order that judgment be entered in the Carmans' favor on their Fourth Amendment claims, and that the Carmans be afforded a new trial with respect to damages.

Respectfully submitted,

DYLLER LAW FIRM

/s/ Barry H. Dyller, Esq.
PA Bar: 65084
Kelly A. Bray, Esq.
PA Bar: 202394
Gettysburg House
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

Attorney for Appellants
Andrew Carman and
Karen Carman

## COMBINED CERTIFICATIONS

BARRY H. DYLLER, ESQ. hereby certifies as follows:

1. He was admitted to practice before the United States Court of Appeals for the Third Circuit on April 14, 1993.

2. Pursuant to Fed.R.App.Pro. 32(a)(7)(B) and (C), this brief contains 6498 words.

3. The text of the E-Brief and hard copies of brief are identical.

4. A virus check was performed on this brief with AVG software, and the brief is virus free.

*On 7/10/13*
5. He served a copy of the foregoing brief on the Appellee by using this Court's electronic filing system ensuring service on all counsel of record, including appellee's attorney, Sean A. Kirkpatrick, Esq., Office of Attorney General, 15th Floor, Strawberry Square, Harrisburg, PA 17120.

s/ BARRY H. DYLLER, ESQ.